IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAMES R. CARROLL,
    Plaintiff,

v.                                            Case No: 5:09cv373/MCR/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Carroll's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Mr. Carroll filed applications for benefits claiming an onset of disability as of February 1, 2004. The applications were denied initially and on reconsideration, and Mr. Carroll requested a hearing before an administrative law judge (ALJ). A hearing was held on May 20, 2009 at which Mr. Carroll was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 9-17) and Mr. Carroll requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 1-3). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Carroll had severe impairments of affective mood disorder and right shoulder tendonitis, but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P; that he could perform a range of light work, with some restrictions on the use of his right arm and shoulder, and limited to performing simple, routine, repetitive tasks not involving contact with the general public; that he could not perform his past relevant work as a counter sales person, delivery person or shipping and receiving clerk; that he was a younger individual with a high school education and proficiency in English; that there were jobs in significant numbers in the national economy that he could perform; and that he was not under a disability as defined in the Act (tr. 11-17).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?

(*Id.*)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th

Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

On July 31, 2006, Mr. Carroll was admitted to Bay Medical Center complaining of chest pain, shortness of breath, and feeling of irregular heart rate with associated palpitations for about 30 minutes prior to arrival. He did not complain of any other risk factors for heart disease. He was scheduled for a stress test for the following morning (tr. 203-10).

On August 1, 2006, Mr. Carroll returned for testing. The examining physician, Thompson Maner, M.D., noted that he doubted ischemic heart disease and wanted to get an echocardiogram prior to Mr. Carroll's discharge. He felt that Mr. Carroll needed risk factor modification, especially with lipid management, blood management, diet, exercise, and weight loss. His exercise tolerance test was negative for ischemic changes (tr. 206). An echocardiogram done the following day by Dr. Michael Morrow, M.D. showed an ejection fraction of 55% (tr. 210).[1]

Almost a year later, on May 4, 2007, Mr. Carroll went to the Wewahitchka Medical Center with complaints of panic attacks, anxiety and bad nerves. He was examined by Peter Obesso, M.D. He told Dr. Obesso that the Lexapro he took for

---

[1]An ejection fraction of 50% or higher is considered normal. Zile, et. al. *Heart Failure with a Normal Ejection Fraction*, 104 Am. Heart J. 779 (2001); http://my.clevelandclinic.org/heart/disorders/ heartfailure/ejectionfraction.aspx (50-70% is considered normal) (viewed on December 6, 2010); http://www.mayoclinic.com/health/ ejection-fraction/AN00360 (Mayo Clinic defines normal as 55-70%) (viewed on December 6, 2010).

*Case No: 5:09cv373/MCR/MD*

depression had stopped working. He complained of inattention and anxiety with agoraphobia and phobia to crowds. He was diagnosed with a generalized anxiety disorder (tr. 270-71).

On June 14, 2007, Mr. Carroll returned to Dr. Obesso with complaints of problems with his nerves and chest pain lasting all day. He also complained of memory difficulties. On examination he was anxious. His shoulders showed abnormalities and muscle spasm with pain on motion of the shoulder. He was diagnosed with chest pain, a right rotator cuff sprain, and panic disorder with agoraphobia. He was scheduled for an electrocardiogram and an MRI of his shoulder (tr. 272-73).

A June 15, 2007 MRI of the right shoulder showed tendinosis and some thickening of the anterior supraspinatus tendon, tendinosis of the distal subscapularis, and a tiny focal possible partial thickness tear near the under-surface of the distal anterior supraspinatus tendon, measuring a couple of mm in size (tr. 299).

A July 12, 2007 CT scan of the brain was read as unremarkable (tr. 298). An October 3, 2007 MRI of the brain showed mucosal thickening within the right maxillary sinus, two or three probable retention cysts within the right maxillary sinus, and what appeared to be a tooth projecting partially into the inferior aspect of the right maxillary sinus. The MRI also showed mild image degradation from motion artifact throughout portions of the study. No brain abnormalities were noted (tr. 296-97).

A year later, on October 23, 2008, Mr. Carroll saw Mustafa Hammad, M.D. complaining of forgetfulness, trouble focusing, and mood and concentration problems. He said he was distracted very easily, had not been able to work for the previous two years, and needed supervision because he would forget the task that he was in process of completing. Dr. Hammad diagnosed memory loss, mild

cognitive dysfunction and anxiety. He recommended an MRI brain scan with and without contrast (tr. 301-03). There is no record that this was done.

On November 6, 2008 Mr. Carroll returned to Dr. Hammad, who noted complaints of continuing memory problems, predominantly with short term memory. Mr. Carroll also complained of back pain, snoring, and feeling tired throughout the day. Dr. Hammad diagnosed memory loss, mild cognitive impairment, muscle spasms, lower back pain/lumbago, and probable obstructive sleep apnea. The memory problems were of uncertain etiology and possibly related to sleep disorder. Dr. Hammad prescribed Flexeril and Motrin (tr. 304-05).

Mr. Carroll was referred to Dr. George L. Horvat, Ph.D., for a psychological evaluation on March 1, 2007. Attention and concentration were normal, but memory was limited, as he missed three of three items after five minutes. Facial expression, mood and affect were depressed. Mr. Carroll said he was not very social and mostly stayed home and worked around the house. Dr. Horvat felt the Mr. Carroll was overwhelmed at times. He diagnosed major depressive disorder and rule out dementia NOS. He stated that Mr. Carroll was not capable of managing his own funds if he were to receive benefits (tr. 217-20).

## DISCUSSION

Mr. Carroll argues that the ALJ erred in failing to apply the appropriate pain standard, and that he was disabled from his onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Mr. Carroll was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

The only issue presented in this appeal concerns Mr. Carroll's claims of pain, which the ALJ found to be less than fully credible.[2] Credibility determinations about subjective testimony generally are reserved to the ALJ. *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987). There is "a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Id*. The Eleventh Circuit has articulated this standard, sometimes referred to as the *Hand*[3] test, as follows:

> **In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.**

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

"While both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991). The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

---

[2]Although Mr. Carroll discusses several alleged mental conditions, his argument here addresses only his alleged pain.

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

A claimant may offer personal testimony as "proof" of the pain. In assessing the credibility of a claimant's testimony concerning pain, the ALJ may consider whether the claimed intensity of the pain is consistent with the reports of treating and examining physicians, and whether it is consistent with the plaintiff's daily activities. See 20 C.F.R. § 404.1529(c)(3)(the ALJ may consider a claimant's daily activities when evaluating her complaints of pain). "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981)(holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4] It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).

But if the ALJ "decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Id*. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005)(internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based

---

[4]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

*Case No: 5:09cv373/MCR/MD*

upon substantial evidence. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Mr. Carroll argues that he had an underlying medical condition and points to various medical entries. But while he had several complaints over time, even after several tests, the only condition for which any physician found any abnormality was his shoulder problem. For example, he complained of chest pain but all tests were negative. The same is true of brain scans, which were read as unremarkable.

Dr. Hammad noted muscle spasms and lower back pain in November 2008. Those had never been mentioned before and had never been treated. Dr. Hammad did not discuss a prognosis and treated Mr. Carroll with a muscle relaxer only. There is no record that Mr. Carroll ever returned to Dr. Hammad. The only other mention of pain concerned Mr. Carroll's shoulder, which was first mentioned to Dr. Obesso in June, 2007. Dr. Obesso ordered an MRI, which showed only some tendinosis and a tiny focal possible partial thickness tear (tr. 299). Dr. Obesso diagnosed only a right rotator cuff sprain (tr. 273). Mr. Carroll did not return to Dr. Obesso.

The ALJ found that Mr. Carroll met the first prong of the pain standard when he found that right shoulder tendonosis was severe. Then, the ALJ noted that there was very little evidence other than Mr. Carroll's testimony to show he met the second or third requirement. Indeed, the objective test, an MRI, suggested a tiny partial thickness tear in the shoulder capsule, nothing more. There was no objective medical evidence confirming the severity of the alleged pain arising from that condition, and the objectively determined medical condition was not of such severity that it could be reasonably expected to produce the pain complained of. The ALJ's finding that Mr. Carroll's complaints were less than credible was supported by substantial record evidence, and he is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 9th day of December, 2010.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:09cv373/MCR/MD*